Call the first case. 19-1017, Safety-Kleen Systems, Inc. v. Illinois Department of Revenue, Illinois. Please step up and identify who's going to be the victims. Priyanka Gupta for Respondent. Doug Siegel for the Petitioner or Appellant. Could you all speak up, please? Yeah, remember, these are recordings, not microphones. And these aren't all that good auditors either. So, yeah. It's an uncompensated disability. Priyanka Gupta for Respondent. Okay. Doug Siegel for the Appellant slash Petitioner. All right. You know the basic rules, 15-15 and a few. Unless we become overly aggressive with questions, then we kind of give you leeway. So you may proceed. And what does the yellow light mean? Does that mean we have five minutes left? No. I think that's a prop. Those are fake lights. Yeah, yeah. I wouldn't worry about it. I've never seen. I didn't even ask when I was there. So even then, it probably never was used. May I proceed? Sure. Good morning. My name is Doug Siegel with the Ryan Law Firm. And this is a use tax case involving the temporary storage provision, which is either an exclusion or exemption from the use tax, depending on how you look at it. Now, here we get into the esoterica, especially for someone like myself who doesn't have really a science or chemistry background of solvents. And so we have a stipulated fax, which do address, albeit in footnote one, what solvents are. And solvents, just to get to the basics, are things like water, paint thinner, anything that takes another device and dilutes it. And so when you think of a solvent, it's somewhat of a unique entity. It's obviously a liquid. It interacts with other things. It's typically used in cleaning. I think maybe of dish detergent, which is something, you know, that I deal with in my home. But in any event, Safety Clean Systems, Inc. has these machines that clean parts. And the cleaning is done with the use of solvents. And the solvents remove from the parts, let's say it's a brake shoe for a car, the grime, the dirt, the chemicals. And at some point, the property really gets transformed because the solvent takes on all this gunk. And I don't want to get too graphic, but it's pretty disgusting. And it really gets to the point of being hazardous waste. And it gets to the point where the solvent really isn't a solvent anymore. So it's kind of a transforming process, as we described in the affidavit. So Safety Clean buys, outside of the state, solvents. They bring those in. They get a use tax exemption. They store them. They combine them with other solvents. And then they take the solvents out of state. Now, the state is arguing that because these used or what I'll refer to as consumed solvents are brought back in for recycling and reprocessing, that the temporary storage exemption is lost because they say that it's all one product and that the property and the product are one and the same. And the problem with the case is that the affidavit, if the judges review that carefully, just doesn't support that. It doesn't support it. Let me just review very quickly some of the things in the affidavit that I think are important. I mean, there's a discussion of what used solvent is, virgin solvent, recycled solvent in the affidavit. And you'll see that those things are much different things from a chemical, physical, legal standpoint. In fact, the stipulation talks about eight differences. And this isn't a stipulation. There's eight differences. And it also says that the refining process that occurs when the used solvent comes back into Illinois, that that transforms the used solvent back into what's been referred to as virgin solvent, or it's also referred to as recycled solvent. And, you know, you could, I suppose, go with the idea of the water table. Well, water comes in at rain. I drink it. It goes into the waste stream. And that water, water never, you know, that same molecule of water, we're going to follow it forever. That isn't a reasonable construction. And that's almost what they're trying to do here. Well, legally, the trial court relied on the shared imaging case to support its decision, right? Right. And two of the three of us were on that panel. So now you're going to have to distinguish it for us. Sure. Well, we obviously have a brain trust here, and you know the case, and you know the issue. Well, that might be overstatement. Well, hopefully it's helpful to compliment the court when I can. It doesn't hurt. But the problem there is you had these mobile medical devices, and they went out of state, and they came back. There was no change to the mobile medical device. I mean, it was a very simple case. You can only use the item once. If you use it, you know, use it by bringing it in, you take it out and bring it back in, you lose the exemption. I understand the logic of that opinion. Nowhere in that opinion was there any issue about something much different. In other words, a mobile medical device doesn't really get transformed. You know, I suppose you could take all the parts of the mobile medical device apart. You could melt all the parts down. You could recycle the metal. And you might have not really an analogous situation, but you'd have something that would be an issue. But that wasn't involved. Here we have completely different property and completely different products that are in Illinois that are then sent out of state. That is used. That's consumed. That's transformed into a completely different property and product. And then it's brought back in and transformed again to another completely different property and product. And the chemical, legal, physical status of these products is much, much different, according to the stipulation of the parties. And there are eight, you know, there are eight different areas in which they're different. And I can, you know, pontificate it. But, in fact, when the used solvent comes back in, it has to go through a process of fractional distillation. And that's really a processing or manufacturing process. Now, I also want to focus quickly on the language of the exemption, the temporary storage exemption, which is, of course, very important. That language, I believe, contemplates a distinction between a product and a new product. Because, and this is reproduced, I think, on page three of Appellant's brief, my opening brief, page three. There's a copy of 35 ILSC 105355E. Anyway, I think if you parse through the statute, it talks about the temporary storage of tangible personal property that is used outside the State and incorporated into other tangible personal property. So the phrase other tangible personal property right off the bat shows the legislature was thinking about property being incorporated or attached to other tangible personal property, and that that's different than the property. But then it goes on and talks about property that is altered, altered. And then it gives examples by converting, fabricating, manufacturing, printing, processing. So in my mind, the legislature, in the wording of this statute, talks about property and then other property and altering the property. So the State's idea and the tax tribunal judge's idea of, well, this static property that we have to trace through, kind of like my water cycle example, I don't think that works. I don't think that makes any sense. And so there's not really a textual basis for that at all. Now, this is maybe an unusual case because we're dealing with solvents and we're dealing with a complete transformation of this. And if you really look at the facts of this case, it's much different than a case, for example, let me give you some examples of easy cases. Let's say you had a tire. The tire leaves the State. The tire gets put on a car. The car comes back in. Well, is the tire coming back in disqualifying the temporary storage exemption? I think there's an argument probably that it does, because the tire didn't really change. It got attached to the car. You might say, well, because it was attached to the car, we're going to allow it to come back in and still claim the temporary storage exemption. So those kind of issues are going to be there, I suppose. Let's say on the mobile medical devices, what if there was a part that broke, okay? So the taxpayer says, well, the mobile medical device came in, but we changed the light bulb. I mean, I think we can definitely see some of those cases where there's not really a transformation of the item like you have here. Okay. You're not arguing that there's a difference between the virgin solvent that they ship out of State and the recycled solvent that they ship out of State. They're both used the same way. They both have the same purpose. They both perform the same way. And I can't tell you that I saw a really good argument that the returned used solvent, that you could separate out the time that the returned used solvent was in Illinois, and then that's substantially different than the virgin solvent. So storing that would be that amount of time as opposed to storing all of the used solvent that became recycled solvent. So, I mean, I could see three separate things, virgin solvent, used solvent, and recycled solvent. But I think the virgin and the recycled perform the same function and act the same way on cleaning parts. So I think that those two things are the same. And I'm more interested in trying to narrow down, see whether or not you can narrow down the used solvent part of this equation. And I would agree with what you're saying completely. I don't think that you've argued that. Well, I think what we're arguing is that the used solvent, which is what's brought in, which is really should be the focus, that's a much different product than the virgin solvent that left the state. But you're including in your brief the used solvent with the recycled solvent. Right. And I couldn't, I mean, I was looking for a way to say, okay, we'll split the baby. But I couldn't find that. And she makes a good point. How do you distinguish that which allegedly has changed and that which has not? How are you going to tax or not tax? So for everything that came back, part of it for sure is taxable. Well, I think the virgin solvent, whenever that's purchased, I mean, obviously they buy virgin solvent incrementally as they need more of that. That's subject to the temporary storage exemption when it comes in. Now, if that gets mixed with recycled solvent, the recycled solvent was created in Illinois, and so the use tax doesn't even apply to the recycled solvent. Remember, the use tax only applies to something you buy or acquire out of state and bring it in. So I would argue, and I think the facts support this, that the recycled solvent is created, is a new product created by SafetyClean in their Illinois facility. That's not subject to use tax. That's different. So I guess I disagree with the idea that mixing these things together is problematic. I don't think that's true, because the product that's brought in is the used solvent. It's a new product. It gets its own temporary storage exemption. But it's brought in from another state and stored in Illinois. And that's allowed because you have a product that you acquire out of state, which is a new product, we argue, because it's not the same product. But then when it comes back the second time, you have to differentiate somehow. Well, think about how it comes back the second time, though. It only comes back after it's mixed with a virgin solvent. That mixture then goes out of state, and it's completely transformed again into a new product and comes back in. And so I don't think that the limitation on the temporary storage exemption ever occurs, because you have a new product. It's like, hey, we make new bread at the bakery every day, right? I mean, it's not exactly the same thing. But, I mean, you're creating new things in Illinois, and you're creating new things outside of the state, and you never really have a problem that you had in the other case with the taxpayer loss. That's my view of it. And there's such a fundamental difference between the used solvent and the virgin solvent and the recycled solvent. And creating recycled solvent out of used solvent is not a taxable activity. There's no use tax applicable to something you create in the state. So I don't really think there's a problem at all with that. Okay, so say the virgin solvent is in white cans, and then it goes to Kansas and gets used in some auto factory, and it comes back as a hazardous waste at this point, and now it's in a green can with a skull and crossbones. And then it gets mixed with white solvent from white cans. The green cans and the white cans get mixed up, and they go into pink cans that are okay to now reship back. At what point do you think the pink cans, the green cans, and the white cans are taxable? Well, I don't think they're taxable in Illinois. And you're leaving out, I don't think intentionally, but I think you're leaving out the step of the recycling plant because the used solvent goes to the recycling plant, and that is then transformed into a basically new product, which is recycled solvent. And that recycled solvent is what is mixed with the virgin solvent. You don't mix the used solvent with the virgin solvent. There's a step in between, which is really important. And the process by which that is all occurring is called fractional distillation. Paragraph 31 of the stipulation goes into that. That's a very fundamental transformation. So you're arguing that only the virgin solvent that's stored in Illinois should be taxed, not the hazardous waste solvent that comes back and is stored for a minute, a day, a month, until it gets mixed up with, until it gets recycled and then mixed with virgin soil and then is shipped out again. Well, what we're arguing is if the virgin solvent or any solvent that's actually used in Illinois and doesn't go out of state, it's consumed here and it never goes out of state, then it would qualify for the temporary storage exemption. We have a percentage that's been calculated. I believe it's 84 or 88 percent in the stipulation. But there's a large percentage of this that is purchased, goes back, comes back, and there's never any tax that's going to be due. And we've got a percentage that's been stipulated to between the parties, by the way, that would be the appropriate percentage. So I think the stipulation really obviates this concern because we have a percentage that's been agreed to of, you know, the true taxable percentage because some of this is used and consumed in Illinois and never goes outside of state. So I don't really think that your question needs to be addressed because of the parties have stipulated on that amount. Does that make sense? And we also have a case called the American Distilling Case, which involved whiskey barrels. And I admit I don't know much about making whiskey or drinking it, but the whiskey barrels were deemed by the court to be a new product vis-a-vis the whiskey barrel because of the interaction with the bourbon with the whiskey barrel. And so I think this is actually a fairly easy case just in terms of the way the statute's worded, the way it contemplates product, new product, modified product. I think that shows an intent not to take the static approach that the State is taking. I also think the facts here really show the incredible transformation of this solvent that occurs. And, Judge Paszynski, I think you're right. There's really three things that we're talking about. And it kind of gets confusing. Maybe some diagrams would have helped in hindsight. But you've got, you know, the virgin solvent. You've got the used solvent, which is really consumed solvent, which is, you know, hazardous waste. And the amount of processing and transformation that has to occur is really unique in the case of solvents. Now, you could talk about milk bottles, for example. You know, milk bottles get made into, you know, children's play things or whatever made out of plastic. And then those end up getting, you know, destroyed and recycled again. And then those end up as milk bottles again. I don't think we would say, well, the milk bottles got made into the children's, you know, toy set. And then somehow they ended up as milk bottles again. When we're doing through all of these processes of industrial plastic recycling, I just don't think that that makes sense to do that in those kinds of situations. You know, think about paper, right? You can start with newspaper. You can take the newspaper, maybe figure out how to make it into roof shingles or cardboard boxes. You know, they're doing all kinds of things with recycling. So then maybe that ends up, at the end of the day, ends up back in newspapers. I mean, I don't think the legislature really suggested that the Department of Revenue needed to be tracing molecules of water or newspapers. You know, I just don't really think that that's the intent of the statute. And I don't think you're undermining your earlier decision at all by agreeing with the taxpayer. I don't think this case has a lot of precedential value. It's not suddenly going to cause everyone to be able to claim the temporary storage exemption. It's a very narrow, fact-specific case. Are there any other questions that I can address? No, thank you. Thank you. And I'm going to ask you again your name only because it doesn't appear you were on the brief. Yes, Your Honor. My colleague who wrote the brief retired. I am Assistant Attorney General Priyanka Gupta on behalf of Respondent Department of Revenue. Yeah, I was just looking for that name. Yes. May it please the Court. SafetyClean has not carried its heavy burden to show that it is exempt from paying a one-time tax on solvent that it uses in Illinois. In Illinois, taxation is the rule and exemptions are to be narrowly construed. The use tax is a sales tax on tangible personal property that is used in Illinois, regardless of whether that property is purchased in Illinois or outside of Illinois. And this tax is critical for the state to raise revenue, and it prevents individuals from avoiding the sales tax by going out of state to make their purchases. It also protects Illinois retailers who lose business to out-of-state vendors who charge less of the sales tax or no tax at all. It is a one-time tax that applies at the time of purchase, and it confers the privilege of unlimited use of that product in Illinois. The Illinois General Assembly has recognized a few limited exemptions to this tax, including the temporary storage exemption. And while my colleagues said that this could be an exemption or an exclusion, depending on how you look at it, that is simply not true. The tax tribunal and this Court in shared imaging found that this is an exemption, and SafetyClean did not raise that argument again on appeal. The parties agree that the first two requirements of this exemption have been met. The solvent was purchased out-of-state and then temporarily stored in Illinois. And SafetyClean does not dispute that the solvent can only be used once in Illinois. But SafetyClean contends that once this clean or virgin solvent is taken from Illinois, shipped to other states, and used and becomes dirty, it is an entirely different product for purposes of taxation. But as part of its business operations, SafetyClean provides this service to its customers where it takes the solvent from Illinois, it's used in other states, it's brought back to Illinois, cleaned, and then used again for the exact same purpose. And SafetyClean repeats this process again and again until it can no longer extract any value from the solvent. That's the type of activity to which the use tax applies. SafetyClean is availing itself of the privilege of using the solvent in Illinois. It's essentially treating Illinois as a home base for its operations. So this is not what opposing counsel suggested, where we're trying to track a molecule as it goes throughout the states and transforms into different things. Instead, the solvent is starting to be stored in Illinois, it goes to other states, and then it keeps coming back to Illinois as part of SafetyClean's operations. And if SafetyClean wishes to avoid paying any tax at all on this, it has to prove that an exemption applies. But as this court noted in shared imaging, the plain text of the temporary storage exemption requires that the property be used solely outside of Illinois after it's stored, period. No limitation. And so this court in shared imaging rejected the plaintiff's arguments about how it could go around the plain language of the statute. And while the facts here might be more complicated, the same reasoning applies. The solvent, after it's stored in Illinois, has to be used outside of Illinois without any type of limitation. We did stipulate that there are differences in the solvent between when it is clean and when it is dirty. And those differences might be important for purposes of environmental considerations, such as how that solvent is transported. But they do not change the analysis for purposes of taxation. Because at the end of the day, notwithstanding these differences, SafetyClean is able to reuse that solvent for the same purpose. So they're essentially trying to have it both ways here. On the one hand, by recycling the solvent, SafetyClean does not have to purchase as much additional virgin solvent to supply to its customers. But on the other hand, it doesn't want to pay any tax at all on this solvent. So it says that once the solvent is used or becomes dirty, it is an entirely different product, and so it shouldn't have to pay a tax. But that simply does not hold up. SafetyClean is trying to read into the statute a requirement that does not exist. The statute doesn't say anything about the property being in the same form when it comes back to Illinois. And as my colleague pointed out, the statute does contemplate that the property might be altered. But then the statute says that as altered, the property cannot come back to Illinois. So the plain text of the statute is clear. This property cannot come back to Illinois if SafetyClean is to be entitled to an exemption. And the primary case upon which Shared SafetyClean relies upon, American Distilling, actually weighs against their arguments. There, after the barrels were used to create whiskey, it was illegal to ever use the barrels for the same purpose again. Here, SafetyClean is capitalizing on reusing the solvent again and again for the same purpose. And as this court noted in American Distilling, taxability often turns on the purpose to which the property is being put. So although the solvent might undergo some changes when it becomes dirty, at the end of the day, it is being used for the same purpose. So this is a very different case than American Distilling. SafetyClean must pay a tax on its purchase of virgin solvent because that solvent, at the end of the day, is part of this rotation. Essentially, it starts in Illinois, it goes back to other states, it comes back to Illinois, is readied for another use, and then goes back to states again. And so SafetyClean has to pay a tax. SafetyClean contends that solvent isn't a solvent anymore once it becomes dirty. But this simply does not hold up. In the record at page 83, footnote 1, the party stipulated here that what happens when solvent is mixed with dirt is that it's creating a solution. Much like when water is mixed with salt, it creates salt water. No one would contend that that water is no longer water because it is mixed with salt. By the same analogy, solvent is still solvent when it's mixed with dirt. But in order to reuse it again and to capitalize on the solvent, SafetyClean has to clean the solvent by, among other things, heating it to remove the dirt. But this does not change the fact that the solvent is still solvent. My colleague in an argument raised some other examples. For instance, when bottles are turned into toys and back into bottles. But this is simply not that type of case. The solvent isn't being turned into a product that is used for some other purpose. The solvent is simply used and it becomes dirty. Then SafetyClean cleans it and it uses it again. And it is free to do so, but in doing so, it is using the solvent in Illinois, and so it should have to pay a tax. And in Illinois, because taxation is the rule, to the extent that this court has any concerns or doubts, all questions must be resolved in favor of taxation. And so if there are no questions, for these reasons and those stated in our brief, we ask that this court affirm the decision of the tax tribunal. Thank you. Thank you. Thank you. I have a few points I'd like to address in rebuttal, and if there's any follow-up questions, I'll be happy to take those. The whole issue of exemptions and how those get dealt with is covered at length in the reply brief that I filed, so I don't want to spend too much time on it. But there's not an argument here that the statute is ambiguous. They haven't established an ambiguity, so we don't really think the idea of strict construction of exemptions comes into play. And that's what we argue in our brief. We also argue that they don't have a regulation that they promulgated on this issue. If they had a regulation, maybe you would give some deference to the regulation. This is really an ad hoc interpretation of this that we think was really made for the first time on audit. So it's not really a situation where, you know, there's an ambiguous statute where you're going to defer to the department. And we think that you definitely need to go with the plain meaning of the statute, which we're very comfortable with because the plain meaning of the statute, as I've discussed, talks about property and other property and property being modified. And the modification that occurred here or the processing that occurred here occurred out of state. And so the whole point of the exemption is to say in-state activities qualify for the temporary storage exemption as long as you don't repeat the same in-state activities with the same property. Here, I think we've shown in that stipulation that you had different property or different products that were created out of state. So, you know, if you have a different product created out of state and you bring it back in, it gets treated as a new product. In fact, the tax tribunal even made that point, and the tax tribunal says in the opinion there are situations where things can be so transformed out of state where they qualify for a new temporary storage exemption. Well, the problem is if this doesn't qualify as a transformation and doesn't get a new temporary storage exemption, I'm not sure you would really ever have that occur. I mean, this is such a clear-cut case. And I think that my opposing counsel tends to underplay the facts because the facts show that this has turned from a solvent into something that's hazardous waste. And the parties have stipulated it can't be used for cleaning. And it's so gumped up with waste that it's really not functioning as a solvent. I don't agree that you would think of this as a solvent. You would think of this as another, really another product. And it has much different characteristics, chemical composition. It's regulated differently. I mean, we point out eight differences in the stipulation. So I don't agree that you should just look at this as one product and the same. Now, probably the biggest thing I want to talk about is her suggestion that the intent of this is to prevent tax avoidance and somehow my client is going to get out of not paying tax on this. I disagree. If you look at the text of the provision, it starts out with these words, to prevent actual or likely multistate taxation. The reason for the temporary storage exemption is pretty obvious. If they're sending these things to other states, those other states are taxing or can tax or should be taxing it because the other state is going to say you brought the solvent and you brought this virgin solvent or recycled solvent time and time again into this state. It was used to clean. It was used up. We get to tax it. And so if anybody should be taxing it, it should be taxed where it's being used. And the whole idea of a temporary storage exemption is to encourage companies to base operation in Illinois and base their operations here. And as long as the products are being used out of the state, then that's why you have a temporary storage exemption. Otherwise, you have a very hostile business climate created because companies are saying, why should we base our activities in Illinois? We're going to get use tax where we wouldn't get in other places. And other states have every ability to tax the solvent when it's used in these other states. And so I really think it's not a good argument for them to say, oh, gee, there's some tax avoidance going on here. No, this is exactly why there's a temporary storage exemption, because manufacturers base their operations here or service provider base operations, and they want to be able to operate out of Illinois and use Illinois as a base. You know, Illinois gets jobs in economic development, and I think that's obviously good. And these other states have every ability to tax, to impose use tax on these things when they're brought into the other states. So you're going to have the problem of duplicative taxation if the department can suddenly say, we're just going to treat this as all one product, we're going to ignore all the facts here. Well, then what happens when the other states say, look, we're taxing it too? You know, then, and I hate to say it, Illinois gets a really bad reputation in the business community for just egregiously creating double taxation. And I think that's really, you know, what the focus of this should be. I don't have any other comments. I think the case has been well briefed. I'm sure you're very familiar with the earlier case. And so if there's any questions you have or any information I can provide, otherwise I'll sit down. All right. Thank you. Thank you. You both did an outstanding job. The briefs were well done. And I give you extra credit for being able to take a case that wasn't yours written and probably did a better job than the brief that was written. Thank you both. Thank you.